United States District Court

For the Northern District of California

1
2
3          UNITED STATES DISTRICT COURT
4          NORTHERN DISTRICT OF CALIFORNIA
5
6
7   PETER DANIEL BOMMERITO, JR.,
8                    Petitioner,                    No. C 05-2341 PJH (PR)
9        vs.                                        **ORDER DENYING
                                                    PETITION FOR WRIT OF
10  JILL BROWN, Warden,                             HABEAS CORPUS**
11                    Respondent.
                              _____/
12

13        This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254

14  challenging a denial of parole.  The court ordered respondent to show cause why the writ

15  should not be granted. Respondent filed a motion to dismiss all claims.  The court granted

16  the motion in part, dismissing one of petitioner's ex post facto claims, but denied the motion

17  as to the remaining claims.  Respondent filed an answer and a memorandum of points and

18  authorities in support of it, and lodged exhibits with the court, and petitioner has filed a

19  traverse.  For the reasons set forth below, the petition will be denied.

20                              **BACKGROUND**

21        On December 15, 1973, petitioner shot Larry Starks, on March 23, 1974, he shot

22  Henry Lee Cowart, and the next day he shot Alfred Redwood.  Starks and Redwood

23  survived the shootings, but Cowart was killed.  All three were African American men whom

24  petitioner had seen with white women.  In 1975, a jury in Los Angeles County Superior

25  Court found petitioner guilty of one count of first-degree murder, Cal. Penal Code § 187,

26  and two counts of assault with a deadly weapon, Cal. Penal Code § 245(a).  The trial court

27  sentenced him to a term of life in prison plus seven years.  On February 23, 2003, after a

28  hearing before the Board of Prison Terms (now the Board of Parole Hearings, or "Board"),

United States District Court

For the Northern District of California

1  during which he was given an opportunity to be heard, the Board found him unsuitable for

2  parole.  Resp. ex. 3 at 65.  The Board based its decision upon the "especially cruel manner

3  with a disregard for human suffering" in which he committed the offense, the multiple

4  victims of the crimes, the motive for the crimes being "hate," an unstable social history of

5  alcohol and drug use, prior criminality including time on adult probation and in jail, three

6  violence-related disciplinary violations while incarcerated, "general" parole plans, and the

7  need for him to maintain his gains over a longer period of time.  *Id.* at 65-68.

**DISCUSSION**

9  **I.    Standard of Review**

10      A district court may not grant a petition challenging a state court decision on the

11  basis of a claim that was reviewed on the merits in state court unless the state court's

12  adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

13  unreasonable application of, clearly established Federal law, as determined by the

14  Supreme Court of the United States; or (2) resulted in a decision that was based on an

15  unreasonable determination of the facts in light of the evidence presented in the State court

16  proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to

17  mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000),

18  while the second prong applies to decisions based on factual determinations, *Miller-El v.*

19  *Cockrell*, 537 U.S. 322, 340 (2003).

20      A state court decision is "contrary to" Supreme Court authority, that is, falls under

21  the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to

22  that reached by [the Supreme] Court on a question of law or if the state court decides a

23  case differently than [the Supreme] Court has on a set of materially indistinguishable facts."

24   *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable

25  application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it

26  correctly identifies the governing legal principle from the Supreme Court's decisions but

27  "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The

28  federal court on habeas review may not issue the writ "simply because that court concludes

United States District Court

For the Northern District of California

1  in its independent judgment that the relevant state-court decision applied clearly

2  established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must

3  be "objectively unreasonable" to support granting the writ.  *See id.* at 409.

4      "Factual determinations by state courts are presumed correct absent clear and

5  convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  A petitioner must present

6  clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness;

7  conclusory assertions will not do.  *Id.*

8      Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

9  determination will not be overturned on factual grounds unless objectively unreasonable in

10  light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340;

11  *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

12      When there is no reasoned opinion from the highest state court to consider the

13  petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*,

14  501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th

15  Cir.2000).

16  **II.    Issues Presented**

17      Petitioner's issues are somewhat unclear, unsurprisingly for a layperson dealing with

18  a complex area of law.  The court tried to set them out concisely in the order to show

19  cause, where it listed his claims as follows: (1) as California's "hate crime" statute was not

20  in effect until 1992, approximately eighteen years after his conviction, the Board violated his

21  ex post facto rights by citing the apparent "hate" motive for the commitment offenses as a

22  reason for denying parole; (2) the denial of parole violated due process in that no evidence

23  supported it; (3) his due process rights were violated in that parole was denied on the basis

24  of "facts" which were untrue; (4) the denial of parole violated his due process and ex post

25  facto rights because a counselor based her report that there was an "unpredictably high"

26  danger that petitioner would reoffend on the counselor's opinion that one cannot predict if a

27  person will reoffend; (5) the parole board's basing its decision in part on petitioner's lack of

28  firm offers of employment, lack of a place to live, and "vague" parole plans, violated

3

United States District Court
For the Northern District of California

1  petitioner's ex post facto rights; and (6) the state courts' failure to require compliance with

2  state law was "egregious."

3       Issue six was dismissed in the order to show cause.  In ruling on a subsequent

4  motion to dismiss, this court dismissed the claim that the Board violated the Ex Post Facto

5  Clause by applying parole consideration factors that came into effect under the

6  Indeterminate Sentencing Law, which was passed long after his conviction and sentence

7  under California's prior sentencing scheme, the Determinate Sentencing Law.  The

8  dismissal of this ex post facto argument effectively dismissed the claims petitioner raises in

9  the fifth claim and the ex post facto portion of the fourth claim listed above.

10      In response to petitioner's claims, respondent denies that petitioner's rights were

11  violated.  Respondent also asserts that California prisoners have no liberty interest in

12  parole and that if they do, the only due process protections available are a right to be heard

13  and a right to be informed of the basis for the denial – that is, respondent contends there is

14  no due process right to have the result supported by sufficient evidence.  Because these

15  contentions go to whether petitioner has any due process rights at all in connection with

16  parole, and if he does, what those rights are, they will addressed first.

17      **A.    Respondent's Contentions**

18          **1.    Liberty Interest**

19      Respondent contends that California law does not create a liberty interest in parole.

20  However, the Ninth Circuit has held that it does.  *See Sass v. California Bd. of Prison*

21  *Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006).  Respondent says that this issue is raised

22  only to preserve it, because at the time the answer was filed a petition for rehearing en

23  banc was pending in *Sass*; that petition has now been denied.  *See Sass*, case no.

24  05-16455 (order Feb. 13, 2007).

25      Respondent's argument as to liberty interest is without merit.

26          **2.    Due-Process Protections**

27      Respondent also contends that even if California prisoners do have a liberty interest

28  in parole, the due process protections to which they are entitled by clearly-established

United States District Court

For the Northern District of California

1   Supreme Court authority are limited to notice, an opportunity to be heard, and a statement

2   of reasons for denial.  That is, she contends there is no due process right to have the

3   decision supported by "some evidence."  This position, however, has been rejected by the

4   Ninth Circuit, which has held that the Supreme Court has clearly established that a parole

5   board's decision deprives a prisoner of due process if the board's decision is not supported

6   by "some evidence in the record", or is "otherwise arbitrary."  *Irons v. Carey*, 479 F.3d 658,

7   662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as

8   outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904

9   (same).  The evidence underlying the Board's decision must also have "some indicia of

10  reliability."  *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915.  The some evidence

11  standard identified in *Hill* is clearly established federal law in the parole context for

12  purposes of § 2254(d).  *See Sass*, 461 F.3d at 1128-1129.

13      **B.      Petitioner's Claims**

14          **1.      "Hate" as Motive**

15          Petitioner's first claim challenges the Board's citing as a factor for denying parole the

16  apparent "hate" motive for petitioner's commitment offenses.  The record shows that the

17  Board considered petitioner's motive for the crimes as a factor tending to show unsuitability

18  for parole.  Resp. Ex. 4 at 65-66.  The Board reviewed the alleged facts of the crimes - he

19  shot each victim, all black males, after observing each in mixed-race relationships.  *Id.* at

20  26.  His version of the events describe his "history of negative experiences with Blacks,

21  which created hostility" and his finding "the victims' behavior unacceptable."  *Id.* at 27.  The

22  Board found that "the motive for this crime was inexplicable in that the motive was based

23  on hate" and on petitioner's attitude towards mixed-race relationships.  *Id.* at 66.

24          Petitioner contends that by taking into account  the fact that racial hatred was a

25  motive for his offense, the Board violated his rights under the Ex Post Facto Clause of the

26  Constitution because California's "hate crime" statute did not come into effect until 1992,

27  long after his offense.  The short answer, of course, is that this claim fails because the hate

28  crime statute has nothing to do with the denial of parole.  As the Board did not violate

United States District Court

For the Northern District of California

1   petitioner's constitutional rights in this respect, the state court's rejections of the claim were

2   not contrary to, or an unreasonable application of, clearly-established United States

3   Supreme Court authority.  Accordingly, petitioner is not entitled to habeas relief on this

4   claim.

5               **2.     "Some Evidence" Claim**

6          In his second claim petitioner makes several arguments.  As is the case with several

7   other claims, what petitioner sets forth under the heading "claim two" of the claim seems to

8   concern matters completely different from the allegations under the "supporting facts" of

9   claim two.  Petition at 8a-8b.  The court has attempted to address all of his arguments,

10  regardless of where petitioner has placed them.

11         Petitioner's claim under the heading portion of  "claim two" is that the Board violated

12  his ex post facto rights by applying to him standards applicable under the Determinate

13  Sentencing Law, when he had been convicted under the older Indeterminate Sentencing

14  Law.  *Id.* at 8a.  This claim was dismissed in the court's order partially granting

15  respondent's motion to dismiss.

16         In the "supporting facts" portion of this claim petitioner appears to be presenting one

17  or more new arguments, but it is difficult to sort out exactly what they might be.  Petitioner

18  argues that the evidence of his recent improvements in prison should have been

19  considered a psychological factor.  Petition at 8b.  As best the court can tell, his position is

20  that when the Board noted that his improvements in "self-help" and therapy were only

21  "recent," Resp. Ex. 3 at 70, this was incorrect because his 2000 psychological report said

22  that he showed no signs of mental disorders, *id.* at 56-57.  If petitioner is trying to argue

23  that the Board was bound by the earlier psychological report, that is no basis for a

24  constitutional claim.

25         Petitioner also appears to argue that there was not some evidence to support the

26  denial of parole because all "psychiatric factors" favored granting parole.  Pet. at 8b.  The

27  recent California Supreme Court of *In re Lawrence*, 44 Cal.4th 1181 (Cal. 2008), clarified

28  what California law requires the Board to find in order to deny parole: That the prisoner is a

United States District Court

For the Northern District of California

1  current threat to public safety, not that some of the specific factors in the regulations have

2  or have not been established.  *Id.* at 1212.  This means that the "some evidence" test is

3  whether there is "some evidence" that the prisoner is a threat, not whether there is "some

4  evidence" to support particular secondary findings of the Board, for instance that the

5  prisoner needs more time for rehabilitation.  *See Irons v. Carey*, 505 F.3d 846, 850 (9th Cir.

6  2007) (when assessing whether a state parole board's suitability determination was

7  supported by "some evidence," the court's analysis is framed by the statutes and

8  regulations governing parole suitability determinations in the relevant state).

9  Consequently, even if there were a lack of evidence of psychiatric reasons that

10  petitioner was not suitable for parole, this would not render such denial

11  unconstitutional provided that there was "some evidence" that petitioner would pose

12  a threat to public safety if released.

13       In ascertaining whether the some evidence standard is met, "the relevant question is

14  whether there is any evidence in the record that could support the conclusion reached by

15  the disciplinary board."  *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128.  The some evidence

16  standard is minimal, and assures that "the record is not so devoid of evidence that the

17  findings of the disciplinary board were without support or otherwise arbitrary."  *Sass*, 461

18  F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

19       The California Superior Court found that the Board "did not err it its determination

20  that [p]etitioner is not suitable for parole at this time."  Resp. ex. 4 at 3.  The court found

21  that the Board had "good reason to conclude that the [p]etitioner would pose an

22  unreasonable risk of danger to society or a threat to public safety if released from prison."

23  *Id.*; *see* Cal. Code Regs. tit. 15, § 2402(a).

24       The record of the parole hearing supports the state court's opinion.  The record

25  shows that the Board reviewed petitioner's lengthy criminal history, Resp. Ex. 3 at 29, and

26  three violence-related disciplinary violations while incarcerated, including a threatening

27  letter he sent to the district attorney's office in 1995, *id.* at 47-50, 67.  The Board heard a

28  statement from the Los Angeles County district attorney arguing that it had only been eight

7

United States District Court

For the Northern District of California

1  years since his last violent disciplinary violation, compared to a twenty-year history of

2  criminality.  *Id.* at 52.  The Board reviewed reports indicating that since his last hearing, he

3  remained disciplinary-free and his behavior had been excellent.  *Id.* at 39.  The Board also

4  reviewed the self-help programs he had completed, including Narcotics Anonymous and an

5  "Alternatives to Violence" program.  *Id.* at 38-39.  The Board noted that "[petitioner] should

6  be commended for a number of things that he has accomplished," but found that "the

7  [petitioner's] gains are recent, he must demonstrate an ability to maintain those gains over

8  an extended period of time . . . these positive aspects of his behavior do not outweigh the

9  factors of unsuitability."  *Id.* at 70-71.

10        The evidence recited above, in particular the nature of the offense, the violence in

11  prison, the threat to the district attorneys office, and the lengthy period of petitioner's

12  criminal behavior, constitutes the "some evidence" required by due process in support of

13  the Board's determination that petitioner was unsuitable for parole.  *See Hill*, 472 U.S. at

14  455; *Sass*, 461 F.3d at 1128.  Consequently, the state court's opinion was neither contrary

15  to nor an unreasonable application of clearly established federal law, and petitioner was not

16  entitled to habeas relief on this claim.

17              **3.      Erroneous Information Claim**

18        Petitioner contends that his due process rights were violated by the Board's

19  consideration of factually erroneous information when it found him unsuitable for parole.

20  Pet. at 8b.  He contends that the Board considered the fact that in his commitment offense

21  he wounded two victims, but he alleges that neither person was in fact "struck by a pellet"

22  or wounded.  *Id.*

23        Petitioner fails to provide any evidence to support his claim that two of the victims

24  were not wounded.  He claims that police reports dated December 12, 1973, and March 24,

25  1974, indicate that neither victim was wounded, *id.*, but does not provide evidence of such

26  reports nor does he point to any indication of such reports in the record.  To the contrary,

27  the record shows that the Board reviewed the probation officer's report which described the

28  three alleged shootings.  Resp. ex. 3 at 26.  The Board also reviewed petitioner's own

**United States District Court**
For the Northern District of California

1   account of the crime from 1990 in which he stated that he agreed with the official version of

2   the offense that indicated that the two victims were wounded.  *Id.*  The Board then gave

3   petitioner a chance to add to the official account, but he stated that it was "essentially

4   correct," and added information about his improved relationships with African Americans.

5   *Id.* at 27.

6       Consequently, there is no basis for finding that the Board relied on false or

7   erroneous facts in reaching its decision.  He is not entitled to federal habeas relief on this

8   claim.

9                   **4.     "Unpredictable Threat" Claim**

10      Petitioner contends that his due process rights were violated by the Board's

11  consideration of the correctional counselor's assessment that he posed an "unpredictably

12  high" degree of threat to the public when it found him unsuitable for parole.  Pet. at 8c.

13  Petitioner states that when asked why she used the word "unpredictably," the counselor

14  explained that "it's impossible to predict if a person is going to re-offend or not."  *Id.*

15  Petitioner also contends that her explanation violated the California Department of

16  Corrections and Rehabilitation Department Operations Manual guidelines and the public

17  trust, and rendered the Board's hearing arbitrary.  *Id.*

18      First, petitioner fails to provide evidence of the explanation he attributes to the

19  counselor.  He does not point to the statement in the record and independent examination

20  of the record reveals her assessment, Resp. ex. 3 at 67, but not the explanation petitioner

21  attributes to her.

22      Second, even if the counselor gave such an explanation, there is no due process

23  guarantee to an accurate correctional counselor's statement.  In parole determinations, due

24  process requires an opportunity to be heard and an explanation for the decision,

25  *Greenholtz*, 442 U.S. at 16, and some evidence, with an indicia of reliability, supporting the

26  decision.  *See Irons*, 479 F.3d at 662; *Sass*, 461 F.3d at 1128-29; *Biggs*, 334 F.3d at 915**.**

27  Relevant in this inquiry "is whether the prisoner was afforded an opportunity to appear

28  before, and present evidence to, the [B]oard."  *Morales v. California Dep't of Corrections*,

**United States District Court**

For the Northern District of California

16 F.3d 1001, 1005 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 449 (1995).

The record shows that petitioner received all the due process required under clearly established federal law.  He was given the opportunity to make statements, Resp. ex. 3 at 21-24, 46, and present letters written on his behalf, *id.* at 44.  He was given an explanation for the Board's denial, *id.* at 65-68.  Further, as described above, the record shows that, in finding him unsuitable for parole, the Board relied on factors supported by some evidence with an indicia of reliability, including the circumstances of the commitment offense, an unstable social history of alcohol and drug use, his prior criminal history, three violence-related disciplinary violations while incarcerated, his "general" parole plans, and the need for him to demonstrate his gains over a longer period of time.  *Id.* at 68-71; *see* Cal. Code Regs. tit. 15, § 2402(c)-(d).  Petitioner received all the process that was constitutionally required, and therefore he is not entitled to federal habeas relief on this claim.

### CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 2, 2009.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.05\BOMMERITO341.RUL.wpd

10